THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PERCY CORNELL BROWN, Defendant-Appellant.

(No. 11221;

Fourth District—October 29, 1970.

Jack Waaler, Public Defender, of Urbana, for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, for the People.

Mr. JUSTICE CLARK delivered the opinion of the court:

Defendant was tried for murder. At the trial the prosecution tendered a manslaughter instruction, the defendant objected and none was given. He was convicted of murder. He now argues that the court *sua sponte* should have given the instruction regardless of his objection and in not giving such, we should reverse and remand for a new trial. In other words, it was error to accede to his objection—which is, to put it mildly, a somewhat bizzare stance in criminal (or even civil) appeals.

■■■ As we have said many times before, we review only errors of law and one of the ways to posit an error for our review is to object to a given happenstance—such as here, a proffered instruction from the other side. By doing so, the objector gives notice of an issue of law and its terms. (*People v. Rollins*, 119 Ill.App.2d 116, 255 N.E.2d 471.) If the objection is disallowed—overruled—he has preserved, saved, or perfected this asserted error for us to pass on. The objecting party has done all he can do, he has pointed out the error and in so doing, as we have said, he has given notice of an issue of law and its terms. Not only that, but it

also gives to the trial court an opportunity to avoid or otherwise obviate the asserted error if it agrees—here it did! As we said in *Rollins*, we review, generally only those errors that have been committed wittingly by the trial court, that is, the court has been given an opportunity to correct that which is complained of by bringing such to its attention.

■■ But what if the objection is allowed as here? Outside of occurrences that might have happened in front of the jury, the allowance of the objection according to its terms removes or avoids the error so far as the objector is concerned. In other words, the trial court is saved from possible error as to which the objecting party could have thereafter complained. If this is so, how can one complain on appeal of an allowance of his objection below? Defendant does so, as we have seen, by asserting, in effect, that even though he objected to the manslaughter instruction, the court should have given it anyway. In other words, he is really objecting to his objection, and is asserting error of his own making for review—sometimes called, "invited error".

■■ The defense was self-defense. In a tavern around midnight, defendant and the deceased had words, defendants claimed deceased reached for his pocket and in self-defense, he shot him. It is unnecessary to narrate the evidence beyond this succinct recital. The circumstances are familiar to all—all that is who read the daily press and view the video. The evidence was conflicting, but in our opinion, sufficient to sustain a conviction for murder. It was *also* sufficient to sustain a conviction for manslaughter. Because this is so, defendant says that regardless of his objection to an instruction for manslaughter, it should have been given anyway—and just maybe he would have been convicted of the lesser offense. One wonders if he had been, whether the overruling of his objection to the instruction might not now be raised as error for outright reversal, for as we know, a conviction for manslaughter in our context is an acquittal of murder, and if there is no evidence to sustain a conviction for manslaughter (not the case here, in our opinion) we must reverse outright.

Admittedly, where the evidence will sustain both murder or manslaughter, a defendant is faced with a taut dilemma, for if he opts for murder or acquittal, he faces the danger of a conviction for just that, although it might have been for the lesser offense had he tendered and had accepted an instruction for manslaughter. By the same token, with a manslaughter instruction present, he might be convicted of such, where in its absence, he might have been found not guilty. The logic of an inexorable effect from a given cause, or a given result from a given set of facts breaks down when the facts are uncertain and depend upon whom to believe. Moreover, it is well known that jurors sometimes opt for the

lesser offense, though they shouldn't, if given the opportunity—*in favorem vitae.*

It is said that we should take the 'gamble' out by holding that where the evidence may establish guilt of either offense regardless of the stance of the parties, a manslaughter instruction must be given and that error can be assigned when it is not. And it might well be, as was pointed out in *People v. Taylor,* 36 Ill.2d 483, 224 N.E.2d 266, that more accurate results might be obtained if the jury were instructed as to both. However, the answer lies, so far as we are concerned, with the following from this very well-reasoned opinion:

"* * * But we are not sufficiently persuaded that we are willing to eliminate by judicial decision an established procedure that has long been considered to operate for the benefit of those accused of crime. We therefore adhere to our present procedure, and hold that the trial judge did not err in failing to give a manslaughter instruction on his own initiative."

In *Taylor,* neither the State nor the defendant tendered a manslaughter instruction, and the same argument made here for remandment was had, with the holding noted above.

The record belies defendant's assertion that the objection to the instruction was "a tactical decision made in haste" to explain such—and presumably to discount its effect. The court posited the dilemma we have referred to very nicely:

"THE COURT: I think you've got to submit an instruction. [for voluntary manslaughter.] The Judge could, but in his discretion. If you don't want one—I can't try your case for you. You can take a chance that they are not going to find the guy guilty of murder and not have a manslaughter instruction in there. If you don't want to take that gamble you put in the manslaughter instruction."

Following this, during the conference on instructions, defendant's counsel inquired of the State's Attorney if he had a manslaughter instruction, with the reply:

"Yes, I have prepared some with the manslaughter elements. But I'm not going to submit them unless you indicate you are willing that this be submitted to the jury. That really falls upon you. You might want to ask your man about that—consult with him."

■■ Thereafter, counsel consulted with defendant and advised "He gave me my choice. Murder or not guilty". And upon inquiry from the court, stated that it was "my inclination, too", and "We are going to ask the Court not to instruct on manslaughter". It is admitedly a "gamble" and it is easy to be self-critical in hindsight, when, we all know, one has 20/20 vision. It is not now much solace, but the "tactical decision" could have

been the right one for experience certainly shows that a great many defendants have been acquitted and it is not mere conjecture but a reasonable supposition that a great many of those so acquitted would have been convicted of manslaughter, *if* the jury had been given the opportunity to do just that. As was said in *Taylor,* while more accurate results might be obtained, change must come by legislation rather than by judicial decision, which is not to say that a court in its discretion may not on its own give a manslaughter instruction even over objection, for a conviction will be sustained if the evidence justifies it. *People v. Beil,* 322 Ill. 434, 153 N.E. 639, cited in *Taylor.*

Next, defendant asks us to reduce the degree of the offense from murder to manslaughter. Rule 615(b) reads:

"On appeal the reviewing court may; (1) * * * (2) * * * (3) reduce the degree of the offense of which the appellant was convicted; * * *."

■■ Whatever we might have done had the evidence not been sufficient on which to base a conviction of murder, the fact is, as we have pointed out, there was sufficient evidence, in our opinion, to sustain a conviction for murder, and that being so, we are precluded from acceding to his request.

■■ We are next told that the defense of self-defense was established as a matter of law, and that therefore, we must reverse. Such contention, however, ignores the conflicting nature of the testimony, and, in particular, testimony of at least two persons, the decedent was seated at the time he was shot. We are told that such testimony is incredible, but as always, we must reply that that question is not for us, but for the jury.

■■ We have carefully considered the alleged error with regard to an instruction and the assertion that the statutory definition of murder and involuntary manslaughter are so identical as to offend standards of due process. In our opinion, such is not the case. In our view, the jury was properly instructed. Accordingly, the judgment appealed from is affirmed.

Judgment affirmed.

SMITH, P. J., and TRAPP, J., concur.